UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------X

EVANSTON INSURANCE COMPANY,

                            *Plaintiff*,

      -against-

BURLINGTON INSURANCE COMPANY,

                            *Defendant.*
----------------------------------------------X

**MEMORANDUM AND ORDER**
23-cv-01401 (JMA) (JMW)

**A P P E A R A N C E S:**

    Olivia M. Gross, Esq.
    **Cullen and Dykman LLP**
    One Battery Park Plaza
    New York, New York 11766
    *Attorney for Plaintiff*

    James Michael Adrian
    **Adrian & Associates, LLC**
    330 E. 48th Street
    New York, New York 10117
    *Attorney for Defendant*

**WICKS**, Magistrate Judge:

Plaintiff Evanston Insurance Company ("Evanston"), commenced the instant insurance coverage action against Defendant Burlington Insurance Company ("Burlington") for breach of fiduciary duty, bad faith, unjust enrichment, indemnification, and equitable contribution arising out of Burlington's alleged refusal to engage in good faith negotiations in settling the underlying personal injury action, *Russell Murray v. Construction Consultants/L.I. Inc. and Waverly Iron*

1

*Corp. et al.*, Index No. 002337/2016 (Sup. Ct. Suffolk County) ("Underlying Action") and/or refusal to contribute towards the settlement of the Underlying Action. (ECF No. 1 at. ¶ 52.) Now before the Court is Burlington's Second Motion to Compel (ECF No. 27), seeking an Order requiring Plaintiff to produce Diane O'Neil ("O'Neil"), Evanston's claims adjuster, for a second deposition to testify on matters related to the Underlying Action. For the reasons set forth below, Burlington's Motion to Compel (ECF No. 27) is **GRANTED**.

## BACKGROUND

### I.    Factual Background

On December 22, 2014 at a construction project located at 100 Greene Avenue, Sayville, New York, Russell Murray ("Murray"), an ironworker, sustained serious personal injuries as he was installing bar joists and roof decking. Specifically, when the unsecured bar joists shifted, he lost his balance and fell off the roof and block wall located at the rear extension of the project. (ECF No. 1 at ¶ ¶ 7- 8.) Thereafter, he commenced the Underlying Action against Waverly Iron Corp. ("Waverly") and Construction Consultants/L.I. Inc. ("CCLI") in the Supreme Court of the State of New York, Suffolk County, seeking damages for his personal injuries.

Murray alleged that his injuries resulted from Waverly and CCLI's negligence and Labor Law violations in allowing a dangerous, hazardous and defective condition to exist where he was working and in failing to provide him with a safe place to work. (*Id*.) It was undisputed that Murray was injured during the course and scope of his employment as an ironworker with MedSteel Construction LLC ("MedSteel"). (*Id*. at ¶ 9.) CCLI impleaded Waverly seeking contractual and common law indemnification and contribution as it pertains to injuries sustained by Murray, and Murray filed an Amended Verified Complaint asserting direct claims against Waverly for negligence and Labor Law violations. (*Id.* at ¶ 10-11.)

Burlington had issued a commercial general liability insurance policy to both Waverly and MedSteel as named insureds with limits of $1,000,000 per occurrence ("Burlington Policies"), and that Evanston had issued an excess commercial general liability insurance policy to Waverly and MedSteel as named insureds with limits of $5,000,000 per occurrence (the "Evanston Policy"). (*Id*. at ¶¶ 13-15.) The Evanston Policy is not triggered until the per occurrence policy limits of the Burlington Policies are fully exhausted. (*Id*. at ¶ 21.)

Pursuant to the terms of the Burlington Policies, Burlington assumed full control of the defense of Waverly in the Underlying Action. (*Id.* at ¶ 23.) In May 2018, Murray filed a motion for summary judgment on the issue of liability under the Labor Law §240(1) cause of action. (*Id.* at ¶ 32.) In July 2018, a mediation was held in the Underlying Action, and Burlington's final offer at mediation was $325,000, "despite the mediator advising that the [Underlying Action] could be settled in the area of about $850,000." (*Id*. at ¶ 35-36.) A settlement was ultimately not reached at that time. (*Id*.) On October 4, 2019, Murray obtained summary judgment on his Labor Law 240(1) claim. (*Id*. at ¶ 40.) Simultaneously, the Court granted CCLI contractual indemnity against Waverly. (*Id*.)

In a May 2021 pretrial conference, Waverly's defense counsel reported to Burlington that Murray had then demanded $4.3 million to settle the Underlying Action. (*Id*. at ¶ 42.) In a subsequent July 2021 settlement conference, Waverly's defense counsel reported to Burlington that Murray lowered the demand to $4.2 million to settle. (*Id*. at ¶ 43.) However, Burlington made no offer to settle the Underlying Action. (*Id*.) Finally, in August 2022, the Underlying Action settled for $2.5 million, with Burlington contributing $1 million under the Burlington Policies on behalf of Waverly and Evanston contributing the remaining $1,500,000 on behalf of Waverly. (*Id*. at ¶ 49.) Evanston alleges that Burlington "refused to engage in meaningful negotiations with

3

Murray and attempt to settle the [Underlying Action] within the per occurrence limits of the Burlington Policies after the Court's decision granting Murray summary on its Labor Law §240(1) claim against Waverly and granting CCLI contractual indemnity against Waverly[,]" and, at the time of trial, Burlington "refused to contribute any more to the settlement of the [Underlying Action] than the $1,000,000 limit" of its policy, resulting in Evanston having to contribute $1.5 million to fund the settlement. (*Id*. at ¶ 47-48, 52.)

II.     **Procedural History**

Evanston commenced the instant action on February 23, 2023, alleging breach of fiduciary duty, bad faith, unjust enrichment, indemnification, and equitable contribution, arising out of Burlington's negotiation in the settlement of the Underlying Action. (*Id.* at ¶¶ 59-60, 76-78, 90, 101, 111.) Evanston contends that Burlington refused to engage in meaningful and good faith negotiations and attempt to settle the Underlying Action and refused to contribute towards the settlement of the Underlying Action, in violation of its obligations under the Burlington Policies. (*Id*. at ¶ 52.) Specifically, Evanston asserts that Burlington failed to negotiate in good faith and had the ability to settle the Underlying Action within its policy limits. (*Id*.)

Burlington filed its First Motion to Compel on January 24, 2024, seeking an Order requiring Evanston to produce "its entire claim files, including claim notes related to the Underlying Action, including any liability analysis, claim valuations, and settlement strategy and negotiations." (ECF No. 19 at 3.) Burlington claimed that Evanston failed to produce documents responsive to Burlington's document demands. (ECF No. 19 at 2.) Burlington's document demands called for: (i) "All Communications between Plaintiff's agents and employees regarding the progress, monetary value, settlement value, and risk profile of the Underlying Action" and (ii) "All correspondence sent to and/or received by Plaintiff responding to any tender of defense and

4

indemnity in the Underlying Action, from any insurer, including but not limited to letters of denial, disclaimer or reservation of rights[.]" (*Id.*) Evanston objected to these requests on the grounds that they were "overbroad[,] unduly burdensome, and [sought] irrelevant information." (ECF No. 19.) On January 11, 2024, Burlington deposed O'Neil, director and senior counsel of complex claims designated by Evanston, who stated "several times" during the deposition that documents responsive to Burlington's document demands would be found in Evanston's claim files or claim notes, which Evanston did not produce in its August 4, 2023 production. (*Id.* at 2.) Burlington asserted that Evanston's claim files and/or claim notes are "essential to the defense of this action" and claimed that Burlington "only learned of the relevant documentation in Evanston's claim files on January 11, 2024, when O'Neil revealed the deficiencies in Evanston's August 4, 2023, production." (*Id.*)

On January 29, 2024, Evanston informed the Court that "in light O'Neil's recent testimony, Evanston [would] produce its claims file and claim notes subject to a privilege log and [would] produce its underwriting file." (ECF No. 20.) Upon review of Evanston's January 29, 2024 Letter, the undersigned directed Burlington to file a letter advising the Court whether the discovery issued raised in its First Motion to Compel had been resolved in light of the Letter. (*See* Electronic Order dated January 30, 2024.) On February 5, 2024, Burlington filed a Letter advising the Court that the discovery issued previously raised in its First Motion to Compel had been resolved in light of Evanston's representation that it would produce its claims file, claims notes, and underwriting file (hereafter, the "Records") to Burlington. (ECF No. 21.) The Court subsequently denied Burlington's First Motion to Compel as moot, in light of Burlington's representation that the discovery issue presented in the Motion had been resolved. (*See* Electronic Order dated February 7, 2024.)

On the heels of that ruling comes the instant motion.

5

### III. The Parties' Contentions

#### A. Burlington's Second Motion to Compel

Burlington filed its Second Motion to Compel on September 6, 2024, seeking an Order requiring Evanston to produce O'Neil for an additional deposition to testify on matters related to the Underlying Action. (ECF No. 27.) Burlington states that on November 29, 2023, Burlington served a 30(b)(6) Deposition Notice with a topic list to Evanston.[1] (*Id.* at 1.) On January 11, 2024, Evanston produced O'Neil and Sarah Maxwell as the corporate designees to testify on behalf of Evanston. (*Id.*) Burlington asserts it did not have any knowledge of the identities of Evanston's corporate witnesses prior to the deposition. (*Id.*) Burlington reiterated that O'Neil testified on the record that Evanston's responses to Burlington's discovery demands were insufficient, and, after Burlington filed its First Motion to Compel, Evanston agreed to produce its claim files and claim notes. (*Id.*) On February 20, 2024, Evanston produced the Records to Burlington. (*Id.*)

After reviewing Evanston's February 20, 2024 production, Burlington claims it determined that it was necessary to depose O'Neil once again. (*Id.*) On May 14, 2024, Burlington served a Deposition Notice pursuant to Federal Rule of Civil Procedure ("FRCP") 30(a)(2)(A)(ii), addressed directly to O'Neil as the claims adjuster of the Underlying Action, to answer specific topic areas based on her personal knowledge. (*Id.*)[2] Burlington's May 14, 2024

---

[1] The Rule 30(b)(6) deposition of O'Neil focused on six topics: (1) The claims at issue in this action; (2) The claims at issue in the Underlying Action; (3) The communication between You and Burlington and/or any other insurer that in any way relate to or concern the Underlying Action or any of the Claims at issue in this Action; (4) Communication between [Evanston] and Burlington concerning the Burlington Policies; (5) The Evanston Policy; and (5) The Burlington Policies. (ECF No. 27-1.)

[2] For example, Defendants state that "Topic area #9 asks about O'Neil's personal understanding and determination of Evanston's coverage position. Topics #11 and #12, ask about O'Neil's personal experience and involvement in the Underlying Action." (*Id.* at 2.)

6

Deposition Notice contains twelve topics:

>1. Evanston's Claim files.
>2. Evanston's Claim notes.
>3. Evanston's Underwriting files.
>4. The facts and Claims alleged in the underlying action Russell Murray v. Construction Consultants/L.I. Inc. and Waverly Iron Corp., Supreme Court of the State of New York, Suffolk County, under Index No. 2337/2016.
>5. The terms and conditions of the Evanston Excess Policy MAX3EC50000660 issued to Waverly Iron Corp. and MedSteel Construction, LLC.
>6. Communications between the Deponent and Burlington and/or any other insurer and/or any other third-party that in any way relates to or concerns (a) the claims at issue in the above-captioned action; (b) the claims at issue in the Underlying Action; (c) the valuation of the claims in the Underlying Action; (d) the settlement negotiations and settlement strategy in the Underlying Action;
>7. Communications between the Deponent and Burlington concerning the Burlington Policies;
>8. Communications between the Deponent and Evanston that in any way relates to or concerns (a) the claims at issue in the above-captioned action; (b) the claims at issue in the Underlying Action; (c) the valuation of the claims in the Underlying Action; (d) the settlement negotiations and settlement strategy in the Underlying Action;
>9. The Deponent's understanding and determination to Evanston's coverage determination and/or position under the Evanston Excess Policy with respect to the Underlying Action;
>10. The Deponent's claim handling method in the Underlying Action;
>11. Deponent's valuation of the claims alleged in the Underlying Action; and
>12. Deponent's involvement in settlement negotiations and strategy of the Underlying Action.

(ECF No. 27-3.) After serving the Deposition Notice, Evanston advised Burlington that O'Neil "would not be made available for further deposition." (*Id.*)

### B. **Evanston's Response in Opposition**

In its Response in Opposition, Evanston argues Evanston's production of its claims file was not late because the claims file had not been previously demanded by Burlington. (ECF No. 28 at 1.) Evanston contends that O'Neil was "prepared to testify as to all items listed in the initial deposition notice, as O'Neil confirmed at her January 11, 2024 deposition." (*Id.*) Evanston maintains that O'Neil testified about the items later listed in the second deposition notice:

>She testified that Evanston is the successor in interest to Alterra, the company that issued the excess policy and that Markel Services administers the claims for Evanston. She had

>complete knowledge about claims handling practices, and since she personally handled the *Murray* claim, she had personal knowledge of the claim, and was the individual who determined that despite the fact that Burlington was obligated to exhaust both underlying polices before payment should have been made by Evanston, that to protect the insured she would pay $1.5 Million on the Alterra policy.

(*Id*. at 5.) Evanston further contends that O'Neil was already produced as both a Rule 30(b)(6) witness and in her individual capacity, as she: (i) testified as to the claims handling for Evanston and that she personally handled the underlying claim, and (ii) was questioned by Burlington's Counsel both as a representative produced for Evanston and as the claim handler with personal knowledge of the Underlying Action as well as the claims made in the instant action. (*Id*. at 3.) Overall, Evanston argues Burlington "ha[s] no grounds on which to depose O'Neil a second time[,]" because Burlington had a full and fair opportunity to depose her and she was fully prepared to testify – and did testify as to all categories of topics with which she was presented – in detail about the Underlying Action. (*Id*. at 6-7.)

## DISCUSSION

### I.  The Legal Framework

"A person who has previously been deposed in a matter may be deposed again, but only with leave of the court." *Sentry Ins. v. Brand Mgmt. Inc.*, No. 10-CV-347 ENV, 2012 WL 3288178, at *8 (E.D.N.Y. Aug. 10, 2012) (citing Fed. R. Civ. P. 30(a)(2)(A)(ii)). Specifically, pursuant to Rule 30(a)(2)(A)(ii), "[l]eave should be granted to the extent that doing so is consistent with the factors set forth" in Rules 26(b)(1) and Rule 26(b)(2), such as: (i) "whether the second deposition of the witness would be unnecessarily cumulative, (ii) whether the party requesting the deposition has had other opportunities to obtain the same information, and (iii) whether the burden of a second deposition outweighs its potential benefit." *Id*.; *Ganci v. U.S. Limousine Serv., Ltd.,* No. CV 10–3027(JFB)(AKT), 2011 WL 4407461, at *2 (E.D.N.Y. Sept. 21, 2011) (collecting cases); *see also*

Fed. R. Civ. P. 30(a) ("A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2) . . . if the parties have not stipulated to the deposition and . . .the deponent has already been deposed in the case.").

*First*, under Rule 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Here, Evanston does not dispute either the relevancy or the proportionality of O'Neil's deposition. *See* ECF No. 28 at 6 ("She is the most knowledgeable witness concerning the issues in this case and the detail of the [U]nderlying [A]ction."). Rather, the argument is that Burlington should not be permitted to simply reopen the deposition since it had ample opportunity to examine the witness. Accordingly, the Court turns to whether re-opening O'Neil's deposition is justified taking into account the factors set forth in Rule 26(b)(2).[3]

---

[3] The Court nevertheless finds that the information sought by Defendants through an additional deposition of O'Neil is relevant to its defenses and proportional to the needs of the case. Plaintiff's primary contention is that Defendant could have negotiated the price of the settlement in the Underlying Action to be at a much lower price (*see* ECF No. 1 at ¶¶ 39, 58, 75, 91, 100, 110), and O'Neil's primary duty as Plaintiff's claims adjuster is to determine the valuation of insurance claims. Defendant has indicated that the deposition will consist of twelve different topics, with many of them focused on her own understanding of the events, the valuation of the claims, and her personal involvement in the settlement, all of which would be relevant to the determination if Defendant could or could not have negotiated the claims in good faith. *See* ECF No. 27. Because O'Neil's individual fact testimony may contain information that could impact the probability of Defendant's negotiations being done improperly, her second deposition after Plaintiff's production of the Records is both relevant and proportional under Rule 26(b)(1). *See e.g.*, *Cedars-Sinai Med. Ctr. v. Ray*, No. 19 MISC. 129 (PAE), 2019 WL 2420045, at *5 (S.D.N.Y. June 10, 2019) ("*Cedars-Sinai Med. Ctr.*") (finding a four-hour deposition narrowly limited to questions about the documents produced after the witness's initial deposition—and following up on the witness's responses to these questions— proportionate to the needs of the case, where the plaintiff sought to question the witness "about seemingly highly relevant documents that it did not have the opportunity to review before [the witness's] initial deposition.").

Rule 26(b)(2) requires a Court to consider: "(1) whether the second deposition of the witness would be unnecessarily cumulative; (2) whether the party requesting the deposition has had other opportunities to obtain the same information; and (3) whether the burden of a second deposition outweighs its potential benefit." *Cedars-Sinai Med. Ctr.*, No. 19 MISC. 129 (PAE), 2019 WL 2420045, at *3 (internal citations omitted); *see also Sentry Ins.*, No. 10–cv–347 (ENV), 2012 WL 3288178, at *8. "The party opposing the second deposition bears the burden of showing that granting the motion would run afoul of Rules 26(b)(1) and (2)." *Id.* (citing *Judicial Watch, Inc. v. United States DOC*, 34 F. Supp. 2d 47,54 (D.D.C. 1998)). "Courts will typically reopen a deposition where there is new information on which a witness should be questioned." *Ganci v. U.S. Limousine Serv., Ltd.*, No. CV 10-3027 (JFB) (AKT), 2011 WL 4407461, at *2 (E.D.N.Y. Sept. 21, 2011) (citations omitted).

Determining whether a second deposition would be "unnecessarily cumulative" requires examining if the new deposition would be duplicative in nature of depositions already taken. *See Cedars-Sinai Med. Ctr.*, No. 19 MISC. 129 (PAE), 2019 WL 2420045, at *4; *see also Siani v. Nassau Cmty. Coll.*, No. 22-CV-7077 (JMA)(SIL), 2024 WL 3045201, at *4 (E.D.N.Y. June 18, 2024), *objections overruled*, No. 22-CV-07077 (JMA) (SIL), 2024 WL 4449404 (E.D.N.Y. Oct. 1, 2024) (quoting *Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, No. 12-CV-5475, 2016 WL 1180194, at *3 (E.D.N.Y. Mar. 25, 2016)) (holding "'the second deposition . . . would be unnecessarily cumulative' because [plaintiff] seeks to re-open the deposition to ask questions again to which defense counsel has appropriately objected during the first deposition."). The question of the information being available through "other means" requires determining if there were other, more convenient channels through which the information could be satisfactorily

10

obtained besides a second deposition. *See Cedars-Sinai Med. Ctr.*, No. 19 MISC. 129 (PAE), 2019 WL 2420045, at *4.

Having to take time to prepare and perhaps "miss work" is an insufficient "burden" standing along to outweigh the benefits of a second round of deposition. That is, there needs to be some greater detriment to the deposed party than mere inconvenience. *Compare id.* at *5 ("Ray's argument that she would be unduly burdened because she would have to take considerable time to prepare and miss work to attend the deposition is unconvincing") *with United States v. Wolin*, No. 17CV02927(KAM)(CLP), 2022 WL 1605659, at *6 (E.D.N.Y. May 20, 2022) (deposing witness for the fifth time "will cause the needless expenditure of time and funds" outweighs any potential benefit in re-deposing her).

A deposition taken pursuant to Rule 30(b)(6) is "substantially different from a witness's deposition as an individual." *Sabre v. First Dominion Cap., LLC*, No. 01CIV2145 (BSJ)(HBP), 2001 WL 1590544, at *1 (S.D.N.Y. Dec. 12, 2001) ("The distinct status of a 30(b)(6) deposition is confirmed by the Advisory Committee Notes to the 1993 amendments to the Federal Rules of Civil Procedure which expressly state that for purposes of calculating the number of a depositions in a case, a 30(b)(6) deposition is separately counted as a single deposition, regardless of the number of witnesses designated. As a separate deposition that probes the knowledge of the entity and not the personal knowledge of the individual testifying, a 30(b)(6) deposition should be subject to its own independent seven-hour limit.").

When a witness is deposed under Rule 30(b)(6), that witness "has a unique status and testifies . . . 'as a representative of the entity, [her] answers bind the entity and [she] is responsible for providing all the relevant information known or reasonably available to the entity.'" *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, No. 01 CIV. 3016(AGS)(HB), 2002 WL

11

1835439, at *2 (S.D.N.Y. Aug. 8, 2002) (quoting *Sabre*, No. 01CIV2145 (BSJ)(HBP), 2001 WL 1590544, at *1). When a witness provides a deposition as a corporate representative under Rule 30(b)(6), they may also be subject to a deposition under Rule 30(b)(1) in their individual capacity:

> [If] a person who is both an individual witness and a 30(b)(6) witness were presumptively subject to a single seven-hour deposition [,] there would be substantial potential for over-reaching. For example, any entity that wanted to limit the testimony of an individual could accomplish that goal by designating the individual as a 30(b)(6) witness; every minute spent conducting the 30(b)(6) deposition would be deducted from the time available to probe the witness's individual knowledge. Conversely, an entity [would be permitted] to curtail 30(b)(6) examinations by designating as a 30(b)(6) witness a person who previously testified for six-hours as an individual and has only one hour left on his or her presumptive seven-hour clock. An interpretation that would lead to such absurd results must be rejected.
>
> This is not to say, however, that the inquiring party has *carte blanche* to depose an individual for seven hours as an individual and seven hours as a 30(b)(6) witness. In the case of many closely held corporations, the knowledge of an individual concerning a particular subject also constitutes the total knowledge of the entity. In such a situation, the witness could simply adopt the testimony he or she provided in a former capacity, thereby obviating the need for a second deposition. In addition, if the questioning at any deposition becomes repetitive or is otherwise being conducted in an oppressive manner, the aggrieved party can always make application for a protective order.
>
> [In conclusion,] [t]he 30(b)(6) deposition of a witness is a separate deposition from the deposition of that same person as an individual witness and is presumptively subject to a separate, independent seven-hour time limit.

*Sabre*, No. 01CIV2145 (BSJ)(HBP), 2001 WL 1590544, at *1-2. With these guideposts in mind, the Court considers the present Motion.

## II.     Analysis

Here, the Court finds each of the 26(b)(2) factors favor granting Burlington's Motion. *First*, the second deposition of O'Neil regarding the records recently produced by Evanston would not be unnecessarily cumulative under Rule 26(b)(2). "Regardless [of] whether [Burlington] seeks to ask similar or even the same questions, [Evanston's] delayed production of [the Records] deprived

12

[Burlington] of its rightful opportunity to put those questions to [O'Neil], a percipient witness, in relation to those new documents." *Cedars-Sinai Med. Ctr*, No. 19 MISC. 129 (PAE), 2019 WL 2420045, at *4. Evanston "has not made any showing that the issues about which [Burlington] seeks to question [O'Neil] exceed the scope of questioning about or derived from the [Records]." *Id*; *see also Ganci*, No. CV 10-3027 JFB AKT, 2011 WL 4407461, at *2 ("Where the deposition is reopened because of newly discovered information, the questioning of the witness is limited to those questions relating to the newly produced information."). Given the likelihood that new non-cumulative information would be discovered by this deposition, and also in consideration of Evanston itself referring to O'Neil as having "knowledge of all aspects and issues involved in this case[,]" a second deposition with the newly produced evidence would not be unduly cumulative. *See Cedars-Sinai Med. Ctr.*, No. 19 MISC. 129 (PAE), 2019 WL 2420045, at *4 ("[A] second deposition limited to questions regarding the belatedly produced documents would not be unduly cumulative.").

*Second*, the Court finds the information Burlington seeks could not have been satisfactorily obtained through other means. Specifically, there was no other opportunity for the Burlington to obtain the information requested because Evanston did not produce the requested Records until *after* O'Neil was initially deposed. Evanston contends it was not late in the production of its claim files and claim notes because Burlington's initial demand "did not [explicitly] seek Evanston's claim file." *See* ECF No. 28. However, Burlington's Document Requests 1-3, 5-6, and 13-25 explicitly show Burlington requested the following:

- All Documents that You Referred or relied upon in drafting the Complaint;
- All Documents exchanged by any party during discovery in the Underlying Action;
- All Documents Relating to the Burlington Policies;
- All Documents Relating to any settlement payments made in the Underlying Action for which Evanston seeks to recover in this Action;

13

- All Documents Relating to Plaintiff's liability and/or damage analysis Relating to the Occurrence;
- All Documents and/or Communications Relating to the potential allocation of payment or indemnification by insurers of the Parties in the Underlying Action; and
- All Documents Relating to any Communication between Plaintiff and Murray or any attorney for Murray Regarding the Occurrence.

*See* ECF No. 27-6.

Regardless, the records eventually produced by Evanston alone "are [not] substitutes for the personal testimony of an individual directly involved in strategic determinations such as the ones at issue here." *Cedars-Sinai Med. Ctr.*, No. 19 MISC. 129 (PAE), 2019 WL 2420045, at *4. As Evanston concedes, O'Neil would be the most appropriate source of new information, as: (i) she was the one who handled the underlying claim, (ii) she had personal knowledge of the underlying claim as well as the claims made in the instant action, and (iii) she "was the individual who determined that despite the fact Burlington was obligated to exhaust both underlying policies before payment should have been made by Evanston, that to protect the insured she would pay $1.5 Million on the [Evanston] policy." *See* ECF No. 28; *see also Cedars-Sinai Med. Ctr.*, No. 19 MISC. 129 (PAE), 2019 WL 2420045, at *4 ("[A]s the individual directly responsible for marketing IBSDetex, Ray may have unique insights into the belatedly produced documents."). Accordingly, questioning Ms. O' Neil about the Records "appears the surest way, and may be the only way" for Burlington to obtain the information it seeks. *Id*.

*Third*, the Court finds the benefit of a second deposition would outweigh any purported burden. Evanston presents no indication that a deposition of O'Neil would be a burden on her, only stating that she "would not be made available for further deposition." *See* ECF No. 27. Burlington seeks to question O'Neil regarding "consequential issues in this litigation" and was not in a position to ask knowledgeable questions regarding the specifics of the Records without first having an opportunity to review them. *Cedars-Sinai Med. Ctr.*, No. 19 MISC. 129 (PAE), 2019

14

WL 2420045, at *4 ("The Court agrees that Cedars-Sina's ability to put informed questions to witness Ray was compromised by the fact that these documents had not been produced—and Ray had not searched for them—as of the date of the first deposition."). Accordingly, her second deposition may reveal new information pertinent to the issues surrounding the settlement of the Underlying Action.

Allowing the reopening of the O'Neil deposition to continue her deposition as a percipient witness is not, however, boundless. That is, Burlington shall not ask questions already asked at the 30(b)(6) deposition. This is not to be construed as an opportunity to take a "second bite at the apple."

## CONCLUSION

For the reasons stated, Burlington's Second Motion to Compel the production of Ms. Diane O'Neil for an additional deposition (ECF No. 27) is **GRANTED**. Burlington is directed to complete the second deposition of O'Neil on or before **November 30, 2024**, which shall be limited to 4 hours and limited to questions not previously asked at the 30(b)(6) deposition. Fact discovery is otherwise closed. *See* Electronic Order dated August 12, 2024 (extending the fact discovery deadline to October 14, 2024). The deadline to take the first steps in summary judgment motion practice is extended to **December 15, 2024**.

Dated:   Central Islip, New York
         November 1, 2024

S O  O R D E R E D:

/s/ *James M. Wicks*
         JAMES M. WICKS
    United States Magistrate Judge